fied in advance of its arrival, and there met it. It was at once opened, and the bunkers found to be seven-eighths full of ice. It is true that there is evidence that the drip pipes connected with the ice bunkers were defective, and that water was not running therefrom; but the evidence on the part of the defendant is (and this evidence is uncontradicted) that the clogging of the drip pipes, or defective drainage from the bunkers, would have no effect on the temperature inside the cars.

It appears that on the arrival of the berries in Buffalo, they were in a rotten condition, and were condemned by the health authorities of the city as worthless. It does not seem possible, if the berries had been delivered to the defendant in good condition at Sunbury at 10:20 the night before, that they would have been spoiled and been in the condition described when the car was opened. The day was not a hot day. The outside temperature was only about 48 degrees; whereas, the temperature of the car inside, when opened, is described as stifling, and probably as high as 75° to 85°, notwithstanding the ice in the bunkers. The night before had been cool, and the only fair inference to be drawn from the facts shown is that the intense heat inside the car was caused, not by the outside temperature, but by the heat caused by the decomposition and fermentation of the berries incident to their decay— a fact of common knowledge and experience under such conditions. Where decomposition is advanced, it could not be well expected that refrigeration would overcome the heat caused by decay.

It is argued that the defendant was responsible for defective car. I do not think the evidence shows the car was defective in any manner which affected the berries; but, if it were, it was not furnished by the defendant, and was not one of its cars, and it cannot, we think, be held responsible for any defects in the car itself. The probabilities all point to the berries having been damaged by reason of defective icing of the car while en route, and before the car was delivered to the defendant. It was en route several times longer before reaching Sunbury than it was from Sunbury to Buffalo, and we cannot find in accordance with the plaintiff's contention that the berries were damaged while on defendant's road.

We think the weight of evidence is against that contention, and therefore dismiss the plaintiff's complaint.

---

(134 App. Div. 358.)

FIESEL v. WHITE SEWING MACH. CO.

(Supreme Court, Appellate Division, First Department.    October 22, 1909.)

TRIAL (§ 16*)—CALENDARS—STRIKING CAUSE FROM DAY CALENDAR—GROUNDS.

Under court rules providing that no application to postpone the trial of a cause sent to a jury for trial shall be entertained, and that when the counsel is actually engaged in the trial of a cause in a court of record the cause shall be passed for the day, etc., an attorney employed in a cause which has been assigned to a part for trial, the presiding justice of which has directed the parties to appear before him at a specified time, when the case would be taken up, is at the specified hour engaged in the trial of the cause, though a jury had not been impaneled; and the justice pre-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

siding over another part cannot send a cause on the day calendar in which such attorney is attorney to the foot of the general calendar because of the inability of the attorney to try it.

[Ed. Note.—For other cases, see Trial, Dec. Dig. § 16.*]

Appeal from Trial Term, New York County.

Action by John Fiesel by Susan Fiesel, his guardian ad litem, against the White Sewing Machine Company. From an order denying a motion to restore the case to the day calendar after it had been sent to the foot of the general calendar, plaintiff appeals. Reversed, and motion to restore granted.

See 131 App. Div. 893, 115 N. Y. Supp. 1120.

Argued before INGRAHAM, LAUGHLIN, CLARKE, HOUGHTON, and SCOTT, JJ.

I. Henry Harris, for appellant.

Clarke & Lyon (Marshall B. Clarke, of counsel), for respondent.

CLARKE, J. This case appeared upon the No. 2 day calendar, called in Trial Term, Part 8, on May 18, 1909, and was No. 55 thereon. On May 19th it was No. 26 on said calendar, and was answered ready by both sides, and the plaintiff held his witnesses throughout that day. On May 20th it was No. 18, and was answered ready on the call. On May 20th the plaintiff's attorney had another case on the No. 1 calendar called in Trial Term, Part 3, which was No. 1 thereon; the justice presiding at the calendar in Part 3 assigned the case No. 1 on his calendar to Part 4 for trial, and the attorney and his witnesses under such direction appeared before the trial justice at said part. A case on trial before him was not quite concluded, and he directed the parties to appear before him at 2 o'clock, when it would be taken up. At said time he requested the pleadings to be handed up, and directed the attorney to start his case; but a jury had not actually been impaneled.

The attorney, relying upon his assignment to Trial Term, Part 4, had at about half past 11 discharged his witnesses for the day in the Fiesel Case. After the handing up of the pleadings and the direction to start his case in Part 4, the attorney was informed that his case, which was No. 18 on the No. 2 calendar in the morning, had been called for trial at 2 o'clock in Part 8. He appeared before the justice there presiding and stated the situation. The justice inquired if a jury had been actually impaneled in Part 4, and, being informed that it had not, refused to pass the case and sent it to the foot of the general calendar. Thereafter plaintiff moved for an order restoring the case to the day calendar, which was referred to the calendar justice who had presided at Part 8, by whom the motion was denied, and from the order entered thereon this appeal is taken.

Rule 6 of the "Rules for the Regulation of Trial Terms of the Supreme Court in the First Judicial Department and to Regulate the Calendar Practice Therein," provides for three separate day calendars, which shall be called, respectively, in Trial Terms, Part 3, Part 8, and Part 14. It further provides for the trial parts to which cases shall be sent from each of said day calendars. It also provides:

"No application to postpone the trial of a cause shall in any case be entertained after such cause has been sent to a part for trial."

Rule 7 provides that:

"In a cause upon a day calendar for trial, where it shall appear to the court by affidavit that counsel who is to try the same * * * is actually engaged in the trial of a cause in a court of record in the counties of New York or Kings, the cause shall be passed for the day, or until such argument or trial is concluded, unless the trial in which the counsel is engaged is a protracted one."

Rule 8 provides that:

"In no event shall a cause on the day calendar be passed from' day to day on account of the engagement of counsel for more than three days. Not more than two causes shall be held ready on one day for a counsel in addition to the cause in which he is engaged."

When the justice presiding at Trial Term, Part 8, called his calendar for the second time at 2 o'clock, the plaintiff's attorney was then actually engaged in Part 4, to which part he had been sent in the morning, and came within that portion of rule 6 which says:

"No application to postpone the trial of a cause shall in any case be entertained after such cause has been sent to a part for trial."

His case in Part 8 had not been passed for three days, or for any day, upon the ground that he was engaged elsewhere. By the order of that presiding judge to proceed before him with the case at bar or else be sent to the foot of the calendar, the situation presented itself that, if the attorney obeyed that instruction, the complaint in his case actually theretofore assigned in Part 4 would have been dismissed, or the cause sent to the foot of the calendar, by reason of the rule forbidding an adjournment after an assignment to a trial part.

We do not think, under the circumstances, that the attorney should have been forced to elect the case in which he should suffer this penalty. The rules are made to facilitate the business of the court, but the rights of litigants should not be sacrificed by a strained interpretation thereof. Reading these rules together, it is clear that when a rule provides that, after a cause has been sent to a part for trial, no application to postpone the trial of the cause shall in any case be entertained after a cause has been assigned to a part for trial, the attorneys engaged in such cause are actually engaged in the trial of a cause as provided in rule 7. The infant plaintiff should not be compelled to suffer the hardship of the delay incident to the sending of his cause to the foot of the general calendar upon the facts here presented.

The order appealed from should be reversed, with $10 costs and disbursements, and the motion to restore the cause to the day calendar granted, with $10 costs. All concur.